# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

————————

No. 05-1757

————————

Ralph E. Dukes,                                    *
                                                   *
            Appellant,                             *
                                                   *        Appeal from the United States
      v.                                           *        District Court for the Eastern
                                                   *        District of Missouri.
Jo Anne B. Barnhart,                               *
Commissioner, Social Security                      *              [PUBLISHED]
Administration,                                    *
                                                   *
            Appellee.

————————

Submitted: October 12, 2005
Filed: February 7, 2006

————————

Before RILEY, HANSEN, and COLLOTON, Circuit Judges.

————————

HANSEN, Circuit Judge.

      Ralph E. Dukes (Dukes) appeals the district court's[1] judgment affirming the Commissioner of Social Security's denial of his application for Supplemental Security Income (SSI) benefits.  We affirm.

------

[1]The Honorable Carol E. Jackson, Chief Judge, United States District Court for the Eastern District of Missouri.

I.

Dukes applied for SSI benefits on April 24, 2000. He alleged disability due to asthma, ulcers, depression, anxiety, and high blood pressure, all of which prevented him from engaging in the activities of daily living. His claim was referred for a hearing before an administrative law judge (ALJ), who held the hearing on August 21, 2002.[2] The ALJ denied Dukes' application for benefits on January 28, 2003, and the Appeals Council denied his request for review on March 30, 2004, making the ALJ's decision the final decision of the Commissioner.

The record reflects that at the time of the hearing before the ALJ, Dukes was 48 years old and had completed a 6th grade education. He received training in the automotive and welding fields through Job Corps and had done some work in both areas. He has also worked as a janitor, dishwasher, and cook, but testified that he has been unable to maintain employment due to his health. His most recent employment, including at the time of the hearing, was working as a laundry worker for National Linen. Dukes began working for National Linen in November 2000 and works somewhere between 28 and 32 hours per week.

Dukes has twelve children and pays child support. He currently lives with his oldest daughter and her four children. He often takes care of the four young children while his daughter is at work, and he also does basic housekeeping chores such as cleaning and cooking. Although Dukes' daughter takes care of his finances, Dukes testified that he was able, but chose not, to do it himself.

---

[2]Dukes' claim was initially denied and went before an ALJ in 2001. At that time he was found to be not disabled and he appealed to the district court. The district court remanded his claim to the Commissioner in early 2002 pursuant to the Commissioner's request. The case then went before an ALJ a second time, which is the ALJ hearing referred to throughout this opinion and from which this appeal arises.

Dukes' relevant medical history involves treatment at various St. Louis area facilities from July 1998 through February 2002. Dukes was seen approximately eleven times in this time period, receiving treatment for complaints related to asthma, heartburn, ulcers, high blood pressure, and high cholesterol. The records show that Dukes' medical complaints were being well-managed through medication and that he received counseling regarding his diet and nutrition. On several occasions Dukes complained of pains in his arms, elbows and shoulders that he attributed to heavy lifting. Those complaints were treated with either Tylenol or ibuprofen. Dukes was also treated for anxiety throughout this period and had been prescribed anxiety medication as early as 1998. That prescription was filled for the first time in June 2000, but in March 2001 Dukes reported that he had not been taking that medication and was feeling fine without it.

Dukes was also treated at the Hopewell Center in St. Louis. A mental status examination in February 2000 showed that Dukes had a mildly depressed mood, a moderately acceptable memory, and no delusional, suicidal, or homicidal thoughts. At a psychiatric evaluation later that month, the examiner noted that Dukes was appropriately dressed, appeared somewhat anxious, and that no signs of depression were evident. Dukes was diagnosed with having a general anxiety disorder and was prescribed medication.

Paul Rexroat, Ph.D., conducted a psychological evaluation of Dukes on June 21, 2000. Dr. Rexroat noted that Dukes suffered no speech problems and no obvious sensory visual or hearing difficulties, and was observed to have a generally task-appropriate activity level. Dukes was able to talk freely with Dr. Rexroat and appeared socially confident and comfortable. Testing showed Dukes had a full scale IQ of 77, placing him in the borderline range of intellectual abilities. A mental status exam showed that Dukes had slight anxiety, a mildly restricted range of emotional responsiveness, a normal affect and energy level, a normal gait and posture, and normal speech, but he reported auditory and tactile hallucinations. Dr. Rexroat

determined that Dukes' symptoms were secondary to his long-term cocaine and marijuana use. Dukes admitted using cocaine the week before the exam and to using both it and marijuana whenever he could obtain it. The conclusions set forth by Dr. Rexroat were that Dukes could understand and remember simple instructions and could sustain concentration and persistence for simple tasks. Dr. Rexroat also stated that Dukes had some limit in his ability to interact socially and adapt to his environment due to his long-term drug use and addiction. Dr. Rexroat's diagnosis was cannabis and cocaine dependence and borderline intelligence, and he assigned Dukes a global assessment of functioning (GAF) score of 55.

On June 27, 2000, a mental residual functional capacity assessment was performed on Dukes. He was found to have moderate limitations in the ability to understand and remember detailed instructions, the ability to carry out detailed orders, the ability to sustain a routine without special supervision, the ability to interact appropriately with the general public, and the ability to complete a normal workday without interruptions from psychologically-based symptoms.

In addition to the complaints in the medical records, Dukes made other subjective complaints. He stated that the machines at work cause him to become dizzy and nauseous and that the physical labor required in his job causes his legs to hurt. He also maintains that his impairments limit his ability to engage in normal activities of daily living. For example, Dukes claims that while he is able to do some housekeeping that he does not have the ability to do it well. Dukes stated that his drivers license has expired and he doesn't have a car, and so he either walks to work or has to get a ride. Dukes also raises issues related to his disability claim regarding his inability to read well, his failure to maintain his own finances, and his limited social interaction.

After reviewing all the evidence before him, the ALJ determined that Dukes had severe impairments of cannabis dependence, cocaine dependence, and borderline

intelligence, but noted that those impairments did not meet a listed impairment. The ALJ next evaluated the credibility and extent of Dukes' subjective complaints and largely discredited those statements. The ALJ then determined Dukes' residual functional capacity (RFC) and utilized the testimony of a vocational expert to determine that Dukes could perform his past relevant work as a janitor or laundry worker. The ALJ found that Dukes was not disabled because he was engaged in substantial gainful employment and that even looking beyond his employment, Dukes was not disabled based on his impairments and subjective complaints.

The Appeals Council denied Dukes' request for review, and Dukes then appealed the denial of his application for SSI benefits to the district court. After a thorough review of the record, the district court upheld the Commissioner's decision on February 14, 2005. Dukes appeals.

II.

"We review de novo a district court decision affirming a denial of social security benefits." Moore ex rel. Moore v. Barnhart, 413 F.3d 718, 721 (8th Cir. 2005). We will affirm if the record as a whole shows substantial evidence that supports the Commissioner's findings, that is, "relevant evidence that a reasonable mind might find adequate to support the Commissioner's decision." Id. When reviewing the case we consider all evidence, both that in support of the Commissioner's decision and that which detracts from it, and we will not reverse as long as there is substantial evidence supporting the outcome. Id.

When reviewing a disability claim, the ALJ undertakes a five-part analysis, which includes determining: (1) whether the claimant is engaged in substantial gainful activity, (2) if the claimant has a severe impairment, (3) whether the impairment is a listed impairment or is comparable to one, (4) if the claimant can engage in past relevant work, and if not (5) whether any other kind of work can be performed by the

claimant. Ellis v. Barnhart, 392 F.3d 988, 993 n.3 (8th Cir. 2005); 20 C.F.R. § 416.920(a)(4). In this case, it is not necessary to look beyond step one.

In order to be eligible for SSI benefits, "the claimant must show he was under a continuing disability while his application was pending." Jernigan v. Sullivan, 948 F.2d 1070, 1072 n.3 (8th Cir. 1991). Step one of the test calls for the ALJ to determine if the claimant engaged in substantial gainful activity during the time the application is being reviewed. If the claimant is so engaged, then he is determined to be not disabled and the analysis is concluded. See Comstock v. Chater, 91 F.3d 1143, 1145 (8th Cir. 1996); 20 C.F.R. § 416.920(b). Dukes applied for SSI benefits on April 24, 2000, and at that time he was unemployed. However, in November 2000, Dukes began working for National Linen and continued to do so through the time of the hearing before the ALJ in 2002. The ALJ determined that Dukes' employment at National Linen constituted substantial gainful activity, and we agree.

Substantial gainful activity is defined as work activity which is both substantial and gainful. Comstock, 91 F.3d at 1145; 20 C.F.R. § 416.972. Substantial activity is significant physical or mental work that is done on a full- or part-time basis. Comstock, 91 F.3d at 1145; 20 C.F.R. § 416.972(a). Gainful activity is simply work that is done for compensation. Comstock, 91 F.3d at 1145; 20 C.F.R. § 416.972(b). To determine if the work a person is doing is considered substantial and gainful, factors such as the amount of compensation and whether the work is done in a special or sheltered environment are considered. Comstock, 91 F.3d at 1145; 20 C.F.R. §§ 416.973, 416.974(a). The claimant is presumed to be engaged in substantial gainful activity if his or her earnings from that activity exceed the limits set by the regulations. Comstock, 91 F.3d at 1145; 20 C.F.R. 416.974(b)(2) (setting compensation levels by year).

The record is clear that Dukes' earnings in 2001 from his work at National Linen averaged $1053.16 per month, more than $400 over the limit determined by the

regulations.[3] The work done by Dukes involved very physical duties and was done in return for compensation. Dukes' work at National Linen clearly meets the definition of substantial gainful activity. Even if we assume, as Dukes contends, that his employer has made some exceptions for him, Dukes has failed to show that special conditions existed that would lead to a finding that the work he has done should not be considered substantial gainful activity. See 20 C.F.R. § 416.973(c) (listing examples of special conditions). Because he is engaged in substantial gainful activity and has failed to rebut the presumption created by his earnings, Dukes is ineligible to receive SSI benefits.

## III.

Because Dukes cannot satisfy the first step of the five-part test, there is no need to consider the remaining steps in evaluating his disability claim. However, if we were to do so, as the ALJ and district court did, we would agree that Dukes is not disabled.

Dukes alleges errors in the ALJ's assessment of his RFC and the ALJ's conclusion that Dukes could perform his past relevant work. Specifically, he argues that the ALJ erred by finding that his subjective complaints were not credible and that the ALJ failed to consider several limitations. Dukes further contends that the hypothetical question presented by the ALJ to the vocational expert (VE) was flawed for failure to include certain factors.

Before the ALJ could determine Dukes' RFC, he first had to assess Dukes' credibility as to his subjective complaints. The ALJ applied the factors discussed in Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984), and determined that Dukes

---

[3]While the regulations list earnings amounts only through 2000, a detailed description of the formula for calculating them is available at http://www.ssa.gov/OACT/COLA/SGA.html.

was not fully credible when it came to his claims of limitations and the extent of his symptoms. In discrediting subjective claims, the ALJ cannot simply invoke Polaski or discredit the claims because they are not fully supported by medical evidence. Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). Instead, the ALJ must make an express credibility determination that explains, based on the record as a whole, why the claims were found to be not credible. Id. at 971-72.

"Where adequately explained and supported, credibility findings are for the ALJ to make." Id. at 972. In this case, the ALJ adequately explained his findings and the inconsistencies in the record on which he based his decision. Particularly, the ALJ discussed the absence of hospitalizations due to health problems, limited treatment of symptoms, the ability to control the various ailments through medication, Dukes' employment during the application period, his overall poor work record, his failure to diligently seek medical care, and Dukes' abilities to regularly perform household chores and shoot pool for recreation. Because we find that the ALJ adequately explained the inconsistencies in the record on which he relied, we uphold his credibility finding.

After the ALJ determined Dukes' RFC, he proceeded to step four of the analysis, which involved determining if Dukes could return to his past relevant work. At this step, the ALJ may use a VE to assist him in making that decision by providing expert advice. Dukes contends that the ALJ posed an improper hypothetical question to the VE because relevant factors the VE should have considered in forming her opinion were omitted. A hypothetical question posed to a VE "need only include those impairments and limitations found credible by the ALJ." Vandenboom v. Barnhart, 421 F.3d 745, 750 (8th Cir. 2005). In addition, "the claimant bears the burden to establish that he or she cannot return to past relevant work." Id. The factors included in the hypothetical to the VE in this case are supported by the record and are consistent with the ALJ's credibility determination. From our review of the record, it is clear that the VE's analysis and opinion included both those factors the ALJ

accepted as true and the factors set forth by Dukes. The VE stated that if she was looking at just the GAF score in question that she would not expect that the person would be able to maintain employment, but that when all the factors were considered as a whole, including those Dukes contends were improperly omitted, she was still of the opinion that employment could be maintained by a person of such characteristics. The fact that Dukes was employed at the time of the hearing in a field of work identified by the VE, laundry laborer, supports the determination that Dukes failed to meet his burden of establishing that he could not engage in past relevant work. We do not find error in the hypothetical posed to the VE or in the ALJ's determination of Dukes' RFC and work abilities.

Even though Dukes is not disabled because he engaged in substantial gainful activity, if we assume, *arguendo*, that Dukes satisfied the first step of the test, we would uphold the determination that Dukes was not disabled because he could perform his past relevant work.

## IV.

Accordingly, we affirm the judgment of the district court.

_____